```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA        :
                                :   CR. NO. 02-392 (RJL)
         v.                     :
                                :   Status: Sept. 7, 2005
JOSE LOPESIERRA                 :
                                :
and                             :
                                :
SAMUEL SANTANDER LOPESIERRA     :
```

GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE
OTHER CRIMES EVIDENCE AGAINST DEFENDANTS
<u>JOSE LOPESIERRA AND SAMUEL SANTANDER LOPESIERRA</u>

The United States of America, by and through counsel, respectfully moves this Court to admit the testimony of two very recently located cooperating witnesses who can provide detailed, first hand testimony concerning drug transactions involving defendants Jose Lopesierra and Santander Lopesierra. As set forth herein, these prior transactions are admissible pursuant to Fed. R. Crim. Pro. 404(b) to show the defendants involvement in the conspiracy charged in this case as well as their knowledge that the cocaine they distributed was destined for the United States. Moreover, the testimony of one of the cooperating witnesses will directly contradict defendant Jose Lopesierra's defense to the charges in this case. In support of this motion, the government states the following:

**FACTUAL BACKGROUND**

A.   <u>The Charged Conspiracy</u>

1

Defendants Jose and Santander Lopesierra are charged in a multi-defendant case with Conspiracy to Distribute Five Kilograms of More of Cocaine, knowing of intending that the Cocaine Would Be Unlawfully Imported Into the United States, in violation of 21 U.S.C. Section 963. The time period alleged in the indictment is from October of 1999 until September 2002. Within the last five business days, the United States has interviewed two cooperating witnesses who are prepared to testify that they were personally involved with both defendants - most particularly Jose Lopesierra - in the shipment of cocaine from Colombia to the United States.[1] Both witnesses selected defendant Jose Lopesierra from a photographic array as the person they were involved with in the international drug trafficking activities. The testimony of these witnesses relates to the time period 1997 to 2000 and thus, some portion predates the time frame of the conspiracy charged in this case.[2]

In order to explain the relevance of the proffered testimony

---

[1] Based upon information provided by these witnesses, the Government is in the process of arranging to interview another potential cooperating witness who has personal knowledge concerning defendant Jose Lopesierra's drug smuggling activities.

[2] The United States has provided counsel for both defendants a summary of the information provided by the cooperating witnesses. Redacted copies of the DEA reports concerning the interviews will be turned over as soon as they are prepared. The Government will also obtain copies of the cooperators case files, including their criminal records, plea agreements, transcripts, as well as all other relevant documents and make them available prior to the start of the trial in this case.

from these two cooperating witnesses, the following section briefly summarizes the evidence against each of the Lopesierras in the existing case.

*Jose Lopesierra*

The evidence against defendant Jose Lopesierra consists of a series of intercepted phone conversations that take place principally during the evening hours of December 1, 2001 into the morning of the next day. Defendant Jose Lopesierra was intercepted in twenty eight (28) conversations during a twelve hour period. During these conversations, the defendant speaks with several unidentified persons concerning mechanical problems associated with a boat that is scheduled to depart from Colombia. In these conversations defendant Jose Lopesierra discusses locating a person identified as "Coco" to perform repairs on the boat and also explains how much food and water should be loaded on the vessel. The defendant also makes reference to other co-defendants in this case, including his brother Santander Lopesierra and "15," which is the alias for the fugitive defendant Ignacio Pana. During conversations recorded several days later, defendant Jose Lopesierra discusses whether the boat has arrived at its destination. All of the phone calls are conducted in a cryptic, coded style of conversation.

The Government expects to prove at trial that these telephone conversations concern the shipment of drugs from the

beach at Uribia, Colombia (located in the country's north coast) to Puerto Rico. The Government intends to proffer a member of the Colombian National Police as a drug expert to help explain the meaning and significance of these conversations to the jury.

*Santander Lopesierra*

The evidence against defendant Santander Lopesierra will establish that he purchased cocaine from other members of the conspiracy in this case and then organized its transportation to the United States, including New York, Miami, and Puerto Rico. The evidence will also establish that the defendant was involved in laundering the proceeds of these drugs sales from the United States back to Colombia. The evidence against defendant Santander Lopesierra will consist of the testimony of other cooperating co-defendants in this case, telephone conversations intercepted during Operation Conquista, and physical evidence, including the defendant's own ledger book.

B. Other Crimes Evidence

The first witness in the case, hereinafter referred to as CS-1, will testify that he was involved in organizing drug loads from Colombia, South America to the United States both by boat and airplane. CS-1 will testify that beginning in 1997 and continuing until the year 2000, he was present at several meetings with defendant Jose Lopesierra concerning Lopesierra's investment in at least four loads of cocaine sent from Colombia

to Jamaica and thereafter to the Bahamas and ultimately, the United States. CS-1 had several conversations with the defendant concerning the fact that the drug loads were destined for the United States and estimates that the total amount of cocaine belonging the Jose Lopesierra was in excess of 100 kilograms. This witness also had discussions with defendant Jose Lopesierra concerning the distribution of the profits after the cocaine was sold in the United States.

In addition, CS-1 will testify that Jose Lopesierra's brother and co-defendant, Samuel Santander Lopesierra, also had an ownership interest in several hundred kilograms of cocaine that were sent by this organization to the United States. CS-1 will explain that Samuel Lopesierra was also present at meetings from the period 1997 until 2000, when the drug shipments were discussed, including the fact that the loads were being sent to the United States.

The second witness, hereinafter referred to as CS-2, will testify that he was also involved with defendant Jose Lopesierra in organizing transportation for cocaine shipments from Colombia to Jamaica and again, on to the Bahamas for final transport to the United States. CS-2 met with defendant Jose Lopesierra on numerous occasions to discuss these drug shipments and recalls specific conversations concerning the loss of a 1000 kilogram load of cocaine en route to the United States. CS-2 advised the

Government that prior to his incarceration, he had listened to some of the telephone conversations involving Jose Lopesierra.[3] According to the witness, he recognized the voice of defendant Lopesierra on the tapes and also that of another person he knows to be a drug trafficker. Significantly, CS-2 also stated that he was personally familiar with a mechanic named "Coco" who works near Uribia. The witness knows that Coco is involved in repairing engines on so called "fast boats" for drug traffickers.

## LEGAL ANALYSIS

A. <u>The Standard For Admitting Other Crimes Evidence</u>

This Court should admit the testimony of CS-1 and CS-2 pursuant to the provision of Fed. R. Crim. Pro. 404(b). That rule provides that evidence of other crimes is admissible to establish "motive, opportunity, intent, preparation; plan, knowledge, identity, or absence of mistake or accident."

The U.S. Court of Appeals for the District of Columbia Circuit has established a two-step test for determining whether 404(b) evidence of other criminal activity is properly admitted in a criminal trial. <u>United States v. Clarke</u>, 24 F.3d 257, 264 (D.C. Cir. 1994). "The first step requires that the evidence be

---

[3] The tapes of these conversations were not played for the witness by any member of either United States or Colombia law enforcement. The Government is planning to re-interview CS-2 in the very near future and under controlled conditions allow him to listen to the tape recorded conversations involving defendant Jose Lopesierra.

probative of some material issue other than character. See Fed. R. Evid. 404(b). The second step requires that the evidence not be inadmissible under Rule 403." Clarke, 24 F.3d at 264 (citing United States v. Washington, 969 F.2d 1073, 1080 (D.C. Cir. 1992), cert. denied, 507 U.S. 922 (1993)).

Moreover, Rule 404(b) is a rule of inclusion rather than a rule of exclusion. Thus, in United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc), cert. denied, 525 U.S. 1149 (1999), the Court of Appeals noted that:

> We have recognized before that although the first sentence of Rule 404(b) is "framed restrictively," the rule itself is "quite permissive," prohibiting the admission of other crimes evidence "in but one circumstance" -- for the purpose of proving that a person's actions conformed to his character. United States v. Jenkins, 928 F.2d 1175 (D.C. Cir. 1991).

Trial courts have wide discretion in determining whether evidence is admissible under Rule 404(b). See United States v. Watson, 894 F.2d 1345, 1349 (D.C. Cir. 1990) If the Court deems the evidence to be relevant, the Court should exclude the evidence only if its probative value "is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978) Indeed, in close cases, the rule tilts toward the admission of the prior misconduct evidence. See United States v. Johnson, 802 F.2d 1459, 1463-64 (D.C. Cir. 1986) ("the balance should generally be

struck in favor of admission when the evidence indicates a close relationship to the event charged". A trial court's 404(b) ruling is afforded "much deference on review," and is reviewed only for an abuse of discretion.  United States v. Cassell, 292 F.3d 788, 792 (D.C. Cir. 2002).

B. Evidence of Prior Drug Distribution is Relevant

In cases charging narcotic violations, evidence of prior drug transactions are relevant and admissible as evidence of a criminal defendant's intent, knowledge, or a common scheme or plan. See United States v. Huff, 959 F.2d 731, 736-37(8th Cir. (1992)(evidence of defendant's prior cocaine transaction was relevant to prove intent and common scheme or plan); United States v. Jones, 248 F.3d 671, 675 (7th Cir. 2001)(prior drug distribution is relevant to prove intent to distribute drugs and knowledge that a particular substance is a narcotic drug); United States v.Ono, 918 F.2d 1462 (9th Cir. 1990)(prior drug conviction relevant to show intent and knowledge); United States v. Latney, 108 F.3d 1446, 1448 (D.C. Cir. 1997)(404(b) analysis also applies to evidence of a later drug transaction and is relevant as evidence of the defendant's intent and knowledge).

Other crimes evidence is also relevant to show the formation of the conspiracy and its operating procedure, the Defendants' knowledge of the conspiracy and their intent to engage in transactions in the time frame of the conspiracy. United States

v. Lockey, 945 F.2d 825, 834 (5th Cir. 1991). The courts have held that prior drug dealing can even be relevant where the prior transaction involved a different drug. United States v. Devine, 934 F.2d 1325, 1345-46 (5th Cir. 1991)(holding that defendant's prior cocaine conviction was relevant to current charge of conspiracy to manufacture and sell methamphetamine); see also United States v. Broussard, 80 F.3d 1025, 1040 (ten year old prior transaction involving different drug admissible in light of fact that both offenses involved conspiracies).

In this case, the prior drug transactions are very similar to the transactions alleged within the charged conspiracy. Both involve schemes to unlawfully send cocaine to the United States from Colombia. The prior acts are relevant to show each defendant's respective intent to distribute, intent to smuggle drugs into the United States, knowledge that the smuggled substances was in fact cocaine, motive for profit, and common scheme or plan. Moreover, the testimony of CS-2 would directly establish that the persons defendant Jose Lopesierra was speaking with were other persons involved in drug trafficking activities.

Similarly, the defendants involvement in prior large scale cocaine trafficking that involved a co-conspirator in the charged offenses is relevant to show their relationship. United States v. Gaviria, 116 F.3d 1498, 1532-33 (D.C. Cir. 1997), cert. denied, 522 U.S. 1082 (1998) (other crimes evidence properly

9

admitted where it shows or tends to show the existence of a relationship between the defendants, and whether it shows or tends to show the defendants had a common scheme or plan which included the offenses for which they are now charged). See United States v. Graham, 83 F.3d 1466 (D.C. Cir. 1996), cert. denied, 519 U.S. 1132 (1997) (evidence of the criminal activity preceding the charged conspiracy helped explain the subsequent formation of the larger conspiracy); United States v. Edmonds, 69 F.3d 1172, 1175 (D.C. Cir. 1995) (evidence of prior narcotics activities of conspirators admitted pursuant to Fed. R. Evid. 404b to show roles in conspiracy). The fact that defendants Jose and Santander Lopesierra were previously involved in drug trafficking activities together is likewise relevant to helping the jury understand their relationship and its relevancy to the charged crime.

The fact that some of the uncharged drug transactions predate the charged conspiracy does not undermine their relevance. See Ono, 918 F.2d at 1465 (seven years old drug conviction relevant and not too remote in drug conspiracy case); United States v. Ross, 886 F.2d 264, 267 (thirteen years); United States v. Spillone, 879 F.2d 514, 519 (9th Cir. 1989)(seventeen years); United States v. Peters, 283 F.3d 300, 312 (5th Cir. 2002)(ten years); Broussard, 80 F.3d at 1040 (ten year old prior drug transaction).

    C.    <u>The Probative Value of Prior Drug Transactions Outweighs Any Prejudicial Effect</u>

Evidence of prior drug transactions is routinely admitted in drug cases. <u>Huff</u>, 959 F.2d 731, 736-37 (8th Cir. 1992). Rule 403 "tilts . . . toward the admission of evidence in close cases," even when other crimes evidence is involved. <u>Cassell</u>, 292 F.3d at 795. The balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged. <u>Id</u>. Thus, in <u>United States v. Gartmon</u>, 146 F.3d 1015 (D.C. Cir. 1998), the Court affirmed the admission of evidence that the defendant, who was charged with fraud, had placed a gun at a wavering co-conspirator and threatened her.

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even prejudicial evidence. Instead, the Rule focuses on the danger of unfair prejudice, and gives the court discretion to exclude evidence only if that danger substantially outweigh[s] the evidence's probative value.

146 F.3d at 1020.

Moreover, the danger that this Court must weigh is not the likelihood that the other crimes evidence will weaken defendant's defense, but rather the danger that the jury will misuse the evidence by inferring that, merely because defendant engaged in these prior bad acts, he is prone to commit charged. <u>See</u> <u>United</u>

States v. Mitchell, 49 F.3d 769, 777 (D.C. Cir.), cert. denied, 516 U.S. 926 (1995).

In this case, the evidence of prior similar transactions is integral to proving essential elements of the charged crimes. Any potential prejudice can be ameliorated by giving the jury a limiting instruction in accordance with Rule 404(b). Jones, 248 F.3d at 676; Huff, 959 F.2d at 737.

## Conclusion

In conclusion, the government intends to offer evidence that Defendants Jose and Santander Lopesierra engaged in prior shipments from Colombia to the United States. The Government urges to Court to conclude that these prior transactions are admissible "other crimes" evidence under Federal Rule 404(b).

>Respectfully submitted
>
>THOMAS PADDEN, Acting Chief
>Narcotic and Dangerous Drug Section
>
>
>_____
>_____
>Robert Feitel
>Michael C. DiLorenzo
>Trial Attorneys
>Narcotic and Dangerous Drug Section
>1400 New York Avenue, N.W. #800
>Washington, D.C. 20005

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing motion was sent via electronic filing and facsimile to Linda George, Esquire, counsel for defendant Jose Lopesierra and to David Zapp, Esquire, counsel for defendant Santander Lopesierra.

_____
Michael C. DiLorenzo